**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 16-cv-3078-WJM-NYW

DR. JAMES BRILL,

    Plaintiff,

v.

CORRECT CARE SOLUTIONS, LLC,
CORRECTIONAL HEALTHCARE COMPANIES, INC.,
CORRECTIONAL HEALTHCARE PHYSICIANS, P.C.,
CARL ANDERSON, individually, and
C. GREGORY TIEMEIR, individually,

    Defendants.

---

**ORDER DENYING CCS DEFENDANTS' AND CARL ANDERSON'S
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

---

Plaintiff Dr. James Brill ("Brill") brings this civil rights action against Correct Care Solutions, LLC, Correctional Healthcare Companies, Inc., Correctional Healthcare Physicians, P.C. (together, "CCS Defendants"), and Carl Anderson and C. Gregory Tiemeier in their individual capacities ("Anderson" and "Tiemeier"), alleging that they violated his constitutional rights by terminating his employment contract with Jefferson County Detention Facility in Golden, Colorado. (ECF No. 23 ("Complaint").) Before the Court is the CCS Defendants' and Anderson's Motion to Dismiss Plaintiffs' First Amended Complaint ("FAC"). (ECF No. 32 ("Motion to Dismiss" OR the "Motion").) For the reasons set forth below, the Motion is denied.

## I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted." The 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

## II. FACTUAL ALLEGATIONS

The Court assumes the following facts taken from Plaintiff's Complaint (ECF No. 23) to be true for present purposes.

Brill is a physician with over forty years of medical experience. Most recently he was employed by the Jefferson County Detention facility in Golden, Colorado, where he served as the Medical Director pursuant to a contract with the CCS Defendants beginning on September 29, 2011. (*Id.* at 1–2.) In that capacity, he supervised a

2

medical practice that included a psychiatrist, psychologist, nurse practitioner, and a physician's assistant who were collectively responsible for the provision of medical care to approximately 1,500 resident inmates. (*Id.* at 8.)

In a lawsuit filed in this District Court styled as *McGill v. Correctional Healthcare Companies, Inc., et al.* in 2003, the plaintiff in that case, Kenneth McGill ("McGill"), an inmate at Jefferson County Detention Facility, brought a constitutional claim against the CCS Defendants, nurse Gina Battenhouse, and Brill, for deliberate indifference to his serious medical needs. (*Id.* at 9.) McGill alleged that he sustained major permanent disabilities as a result of the "defendants' intentional and deliberate delay in providing him with critical medical treatment." (*Id.*) Brill was initially included in the lawsuit as a defendant because he was the Medical Director of the Jefferson County Detention Facility and had treated McGill on occasion. (*Id.*) The CCS Defendants retained co-defendant and attorney Tiemeier as legal counsel to represent them, nurse Battenhouse, and Brill as co-defendants in the *McGill* case.

As the case proceeded, after Brill's deposition, McGill decided to voluntarily dismiss all his legal claims against Brill and instead only pursue claims against the CCS Defendants, nurse Battenhouse, and certain governmental defendants, including Jefferson County. (*Id.* at 10.) Tiemeier initially refused to allow McGill to voluntarily dismiss Dr. Brill as a defendant from that case, despite being Brill's attorney. (*Id.*) This prompted the independent mediator, retired federal district judge William Downes, to caution Brill to retain his own counsel. (*Id.*) At this point, Brill retained his own counsel to ensure that his interests were adequately represented. (*Id.*) McGill eventually

3

dismissed Brill as a defendant, over the objections of the CCS Defendants, represented by Tiemeier. (*Id.* at 11.) Throughout the case, Tiemeier continued to state, "[CCS] Defendants did not agree to the terms of the stipulation [to dismiss Dr. Brill] and did not sign it" (*id.*), and he even went so far as to designate Brill as a non-party tortfeasor (*id*). This caught the attention of the presiding judge in that case, United States District Judge R. Brooke Jackson, who commented, "I suspect Dr. Brill would be rather surprised and disappointed, to say the least, to find that [CCS] and its lawyers have turned on him." (*Id.* at 12.)

On December 2, 2014, during the jury trial in that case, McGill's counsel called Brill as a witness to testify regarding McGill's treatment at the Jefferson County Detention Facility. (*Id.*) McGill's counsel asked Brill what he would have done had CCS Defendants' nurse contacted him on the relevant night regarding the neurological abnormalities plaintiff was exhibiting. (*Id.*) Brill testified that had he been contacted, he would have promptly sent McGill to the hospital instead of waiting until the following morning, as the CCS Defendants had done. (*Id.*) Brill's testimony undermined the CCS Defendants', Tiemeier's, and Jefferson County's theory of the case that McGill's symptoms did not present as being serious enough to justify prompt treatment outside the jail. (*Id.*) Brill was recalled to testify by the CCS Defendants' counsel on December 15, 2014. (*Id.*) Within hours of this testimony, Defendant Anderson, the CCS Defendants' Regional Manager, Jail Division, called Brill to alert him that the CCS Defendants had terminated his employment contract and were giving him two weeks' notice. (*Id.* at 13.) When Brill asked why he was being terminated, Defendant

4

Anderson refused to give him a reason. (*Id.*) That same evening, the jury awarded Mr. McGill over $11 million in damages, with over $7.5 million in punitive damages. (*Id.*)

Based on this set of events, Brill raises four claims for relief against the CCS Defendants and Anderson: (1) violations of First and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983 (*id* at 17); (2) Conspiracy to tamper with and/or retaliate against witness under 42 U.S.C. § 1985(2) (*id* at 18); (3) Prevention of judicial access to employees under C.R.S. § 8-2.5-101 (*id* at 20); and (4) Outrageous conduct/ intentional infliction of emotional distress (*id.* at 21).

As to Brill's second claim, of witness tampering or retaliation, he alleges two theories in the alternative. First, Brill argues that Defendants' conduct was motivated by a desire to tamper with Brill as a witness. (*Id.*) According to Plaintiff, "[i]f Defendants had already decided to terminate Dr. Brill before he provided his testimony, *but for* their intention to illegally induce and bribe Dr. Brill to provide relatively favorable testimony for them during the *McGill* trial by continuing to employ and pay him during that time, they illegally tampered with his testimony by retaining him as an employee until right after he finished testifying." (*Id.* at 13–14.) Alternatively, Brill argues, "Defendants fired Dr. Brill to retaliate against him for testifying truthfully at the *McGill* trial instead of towing [*sic*] the party line, as his then-employer and Defendant Tiemeier had repeatedly pressured him to do." (*Id.* at 14.)

### III. ANALYSIS

In their motion to Dismiss (ECF No. 32), the CCS Defendants and Anderson argue that Plaintiff's Complaint should be dismissed in its entirety on three grounds: (1)

the FAC fails to plead that the termination of Brill's contract was controlled by a state actor, and therefore there is no state action for purposes of § 1983 (ECF No. 32 at 5); (2) Brill has not adequately plead that there was an agreement to conspire against him for testifying in the *McGill* case (*id.* at 10); and (3) Plaintiff's remaining claims are state law claims, over which this Court should not exercise its supplemental jurisdiction (*id.* at 13). The Court addresses each of the CCS Defendants' and Anderson's arguments in turn.

**A.    Lack of State Action**

To succeed on a §1983 claim at the pleading stage, the Complaint must plead that the alleged deprivation was committed by a person acting under color of state law. *See*, *e.g. Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 930 (1982). There are four approaches to determining whether state action is present: (1) the public function test, (2) the nexus test, (3) symbiotic or entwinement test, and (4) the joint action test. *Johnson v. Rodrigues*, 293 F.3d 1196,1202 (10th Cir. 2002). Under the public function test, "[i]f the state delegates to a private party a function traditionally exclusively reserved to the State, then the party is necessarily a state actor." *Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1422, 1456 (10th Cir. 2005). Under the nexus test, a plaintiff must demonstrate that "there is a sufficiently close nexus" between the government and the challenged conduct such that the conduct "may be fairly treated as that of the state itself." *Jackson v. Metropolitan Edison Company*, 419 U.S. 449, 351 (10th Cir. 1974).

Under this test, a state can be held responsible for a private decision "only when it has exercised coercive power or has provided such significant encouragement, either

overt or covert, that the choice must in law be deemed to be that of the state." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982).  Under the symbiotic or entwinement test, a private entity is deemed to be a state actor where the state "has so far insinuated itself into a position of interdependence with a private party that it must be recognized as a joint participant in the challenged activity."  *Gallagher*, 49 F.3d at 1447, 1451.  Finally under the joint action test, "courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights."  *Gallagher*, 49 F.3d at 1453.

The CCS Defendants and Anderson argue that under any of these approaches, there must be a state decision and state control behind the challenged action. (ECF No. 32 at 5.)  Moreover, the CCS Defendants and Anderson maintain that "a person or entity may be a state actor for one purpose, but not for another."  (*Id*; (*Citing Weinrauch v. Park City*, 751 F.2d 357, 360–361 (10th Cir. 1984).)).

The Tenth Circuit has held that

> A claim upon which relief may be granted to plaintiffs against defendants under § 1983 must embody at least two elements. The plaintiffs are first bound to show that they have been deprived of a right secured by the Constitution and the laws of the United States.  They must secondly show that defendants deprived them of this right acting under color of state statute of the state."

*Johnson*, 293 F.3d at 1202.  The Supreme Court has created a two part test to determine whether a private party's action constitutes state action:

> First, the deprivation must be caused by the exercise of some right to privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the state is responsible . . . Second, the party charged with the

> deprivation must be a person who may fairly be said to be a state actor. This may be because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the state.

*Lugar,* 457 U.S. at 937. The Tenth Circuit utilizes the four tests listed above to determine whether private parties should be deemed state actors when conducting a state action analysis. *Johnson*; *Gallagher v. "Neil Young Freedom Concert,"* 49 F.3d 1442 (10th Cir. 1995).

The Supreme Court has repeatedly emphasized the complicated nature of the state action inquiry. In *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 722 (1961), the Court stated, "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance." In *Brentwood Acad. v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 295–296 (2001), the Supreme Court stated,

> What is fairly attributable is a matter of normative judgment, and the criteria lack rigid simplicity. From the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government.

In his Consolidated Response to Defendants' Motions to Dismiss (ECF No. 36), Brill argues that in his FAC he has sufficiently alleged facts which satisfy the four-test state action inquiry discussed above. The Court agrees. Brill argues that the CCS Defendants and Anderson are state actors under the public function test because "their challenged conduct was fundamentally and overwhelmingly public in nature." (ECF No. 36 at 10.) The *McGill* case was a public lawsuit and the *McGill* trial was a public

8

proceeding and the CCS Defendants and its nurse were deemed to be state actors in that case, subject to liability under the United States Constitution. Brill argues that the CCS Defendants and Anderson "willfully acted in concert with Jefferson County public officials (either directly or through counsel) to violate Dr. Brill's civil rights because and only because of his participation in the public *McGill* case." (ECF No. 36 at 11.) Brill also alleges that the CCS Defendants and Anderson are state actors under the nexus test because Jefferson County provided "significant encouragement, both overt and covert, to the private Defendants, including the CCS Defendants, Defendant Tiemeier, and Defendant Anderson, in their decisions to illegally tamper with Dr. Brill's testimony and illegally retaliate against Dr. Brill for his full and honest testimony in the *McGill* case. (*Id.* at 14.) Brill alleges that the CCS Defendants and Anderson are state actors under the symbiotic test because they "jointly [with Jefferson County] were responsible for the provision of adequate medical care at Jefferson County Detention facility." (*Id.* at 13.)

Finally, Brill alleges that the CCS Defendants and Anderson are state actors under the joint action test because Jefferson County "condoned and approved of" Dr. Brill's illegal and retaliatory termination." (*Id.* at 5.) According to Brill, Jefferson County was "substantially motivated in response to Dr. Brill's decision to provide truthful testimony in the *McGill* case, as Dr. Brill's truthful testimony increased defendant Jefferson County's exposure to liability at trial based on its nondelegable duty to provide medical care to detainees and inmates at its detention facility." (*Id.*)

The Court finds that by virtue of these substantial, non-conclusory and well-plead allegations that Plaintiff has plausibly asserted that state action was necessarily

9

implicated by the private Defendants' conduct in this case such that, at least for purposes of the instant Motion, Plaintiff has shown that relief against the private Defendant movants under § 1983 might be granted.  (ECF No. 36 at 4–15).  Moreover, the Court notes that in this case, state action is a "necessarily fact-bound inquiry".   For this separate reason, the Court easily concludes that Defendants' arguments that they are not state actors for purposes of Plaintiff's § 1983 claim form an inappropriate basis for dismissal under Rule 12(b)(6).  *Lugar*, 457 U.S. at 939.  For all these reasons the Court will not dismiss Plaintiff's § 1983 claim for lack of state action.

**B.      Conspiracy Claim**

The CCS Defendants and Anderson also contend that Plaintiff's Complaint should be dismissed because Brill did not adequately plead that there was an agreement to conspire against him for testifying in the *McGill* case.  (ECF No. 32 at 10.)

A plaintiff must establish three elements to assert a claim under § 1985(2): (1) a conspiracy, (2) to deter attendance in court or testimony by force or intimidation or to injure a witness for having appeared in court or testified , and (3) injury to plaintiff. *Hogan v. Winder*, 762 F.3d 1096,1113 (10th Cir. 2014).  The CCS Defendants and Anderson argue that there must be a meeting of minds or agreement among the defendants, which may be shown by either direct or circumstantial evidence.  (ECF No. 32 at 10.)  The movants here argue that "[t]his must be established at the pleading stage; a plaintiff cannot use discovery to conduct a fishing expedition in hope that some fact supporting an allegation will be uncovered.  (*Id.* at 11.)  According to these Defendants, "[e]ven at the pleading stage, mere conclusory allegations regarding the agreement are insufficient." (*Id.* at 10.)  They maintain that the FAC is "noticeably

lacking regarding this first element of a Section 1985 claim; that is, he does not sufficiently allege a conspiracy. More specifically, he fails to allege an agreement amongst the Defendants." (*Id.* at 12.)

In his Consolidated Response to Defendants' Motions to Dismiss (ECF No. 36), Brill argues that his FAC properly alleges all elements demonstrating that CCS Defendants engaged in an illegal conspiracy. (ECF No. 36 at 16.) In this context, the Court observes that "[t]he nature of conspiracies often makes it impossible to provide details at the pleading stage and . . . the pleader should be allowed to resort to the discovery process and not be subject to dismissal of his complaint." *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994). Additionally, a plaintiff "need only allege facts sufficient to give rise to the inference that defendants conspired." *Id.* at 1127 (*citing Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1231 (10th Cir. 1990).

Here, the Court finds that Brill has alleged sufficient facts to create an inference of a meeting of minds of the conspirators. Brill alleged that he was terminated "in retaliation for his honest testimony in *McGill*," because this testimony conflicted with "the false story of [CCS Defendants]." (ECF No. 23 at 18–20 at ¶¶ 93-98.) Furthermore, Brill alleges that while the *McGill* case was pending, Defendants Tiemeier, Anderson and the CCS Defendants were acting contrary to his interests, despite being co-defendants, represented by the same counsel. Based on these facts, the Court finds that Brill has pled sufficient facts to plausibly allege an unlawful conspiracy in violation of 42 U.S.C. §1985(2) and to defeat a Motion to Dismiss brought under Rule 12(b)(6).

Thus, the CCS Defendants' and Anderson's Motion to Dismiss Plaintiff's § 1985 conspiracy claim will also be denied.

### C. Supplemental Jurisdiction

Finally, the CCS Defendants and Anderson contend that the Court should not exercise its supplemental jurisdiction over the state law claims asserted against them. (ECF No. 32 at 13.) These Defendants argue that because the Court should dismiss the federal claims over which it has original jurisdiction, it should also decline to exercise its supplemental jurisdiction over the related state law claims. (*Id.*) Given the Court's ruling today that Plaintiff's federal claims against the CCS and Anderson will proceed, the predicate for Defendants' argument no longer obtains. As a consequence the Court will retain supplemental jurisdiction over the related state law claims against these moving Defendants.

### IV. CONCLUSION

For the reasons set forth above, the CCS Defendants' and Anderson's Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (ECF No. 32) is DENIED in its entirety.

Dated this 2nd day of January, 2018.

BY THE COURT:

_____
William J. Martínez
United States District Judge